IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **Max Ridings and Sue Ridings,** )<br>)<br>**Plaintiffs,** )<br>)<br>v.       )<br>)<br>**Scott Maurice,** *et al.*, )<br>)<br>**Defendants.** ) | Case No. 15-00020-CV-W-JTM |

**ORDER**

On December 11, 2014, plaintiffs Max Ridings and Sue Ridings, husband and wife ("the Ridings"), filed this action in the Circuit Court of Jackson County, Missouri, alleging injuries arising from Max Ridings' use of the prescription drug Pradaxa as prescribed to him by his physician, Dr. Sanjaya Gupta. The Ridings assert various theories of liability including strict liability, negligence, breach of implied and express warranty, violation of the Missouri Merchandising Practices Act, fraud, and negligent misrepresentation.  In their lawsuit, the Ridings named as defendants the corporate entities that allegedly manufacture and distribute Pradaxa – Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corp., Boehringer Ingelheim USA Corp., Boehringer Ingelheim Pharma GMBH & Co. KG, and Boehringer Ingelheim International GMBH (collectively referenced as "Boehringer").  In addition, the Ridings also named as defendants in their lawsuit five individual sales representatives of Boehringer Ingelheim Pharmaceuticals, Inc. – Scott Maurice, Matthew Hoesch, Maurice Jackson, John Mimnaugh, and Jennifer Caskey.  Finally, the Ridings asserted claims against John Does 1-20 described as unknown "individuals, partnerships, or corporations who are or were engaged in the business of marketing, selling, distributing, and promoting Pradaxa."

On January 9, 2015, Boehringer removed the case to this Court based on diversity of citizenship. To that end, the Ridings are citizens and residents of the State of Missouri and the Boehringer entities are citizens of various jurisdictions, but are not citizens of Missouri. However, the four of the five individual sales representatives are citizens of Missouri.[1] With respect to the Missouri sales representatives, Boehringer's removal papers included declarations from the individuals that detailed that they each:

(a) played no role in the design, testing or manufacture of Pradaxa;

(b) played no role in the development or publishing of Pradaxa package inserts or marketing materials accompanying the drug or otherwise disseminated to health care providers.

(c) did not create, alter, revise or have any involvement in obtaining any approval for any warnings or instructions relating to Pradaxa

(d) did not personally know and have not had any direct dealings or communications with the Ridings

(e) did not personally know or ever have any Pradaxa-related contact with Dr. Sanjaya Gupta; and

(f) did not sell Pradaxa or make any warranties or representations regarding Pradaxa to the Ridings or Dr. Sanjaya Gupta.

Arguing that the individual sales representatives were fraudulently joined, Boehringer asserted that there was complete diversity between the plaintiffs and properly named defendants and, in light of the fact that the amount in controversy exceeded $75,000, jurisdiction was proper in this Court pursuant to 28 U.S.C. § 1332. On January 26, 2015, the Ridings timely filed their PLAINTIFFS' MOTION TO REMAND [Doc. 13]. For the reasons set out herein, the motion is denied.

---

[1] Defendant Scott Maurice appears to be a citizen of the State of Kansas. The fictitious John Doe defendants are "disregarded" for purposes of citizenship and diversity considerations. 28 U.S.C. § 1441(b)(2).

It is axiomatic that federal courts are court of limited jurisdiction. *Godfrey v. Pulitzer Publishing Co.,* 161 F.3d 1137, 1141 (8th Cir. 1998). As such, federal courts "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994). Where so authorized, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Barzilay v. Barzilay,* 536 F.3d 844, 849 (8th Cir. 2008). However, if a federal court takes action in a dispute over which it lacks subject matter jurisdiction, that action is a nullity. *Compare Hart v. Terminex Int'l,* 336 F.3d 541, 541-42 (7th Cir. 2003) (noting that it was "regrettable" that the case had to be dismissed for lack of subject matter jurisdiction "rendering everything that has occurred in [the] eight years [of litigation] a nullity").

Congress has determined that federal district courts should have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different States. . . ." 28 U.S.C. § 1332. Inasmuch as a claim may be removed to federal court only if it could have been brought in federal court originally; the diversity and "amount in controversy" requirements of 28 U.S.C. § 1332 must be met in a removed case or a claim is subject to remand to state court. *Peters v. Union Pacific R.R. Co.,* 80 F.3d 257, 260 (8th Cir. 1996). To that end:

> Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand.

*Manning v. Wal–Mart Stores East, Inc.,* 304 F.Supp.2d 1146, 1148 (E.D.Mo.2004) (*citing Transit Cas. Co. v. Certain Underwriters at Lloyd's of London,* 119 F.3d 619, 625 (8th Cir. 1997)).

Inasmuch as a civil action brought in state court may be removed to the proper district court only if the district court has original jurisdiction of the action, as a basic proposition, actions where jurisdiction is predicated solely on diversity are "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).[2] For purposes of this case and the pending motion to remand, the key phrase in Section 1441 is "properly joined."

As the Eighth Circuit has noted, "[w]hile fraudulent joinder – the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal – is rather easily defined, it is much more difficultly applied." *Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003). Certain aspects of fraudulent jurisprudence are straightforward. For instance, "if it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Iowa Public Service Co. v. Medicine Bow Coal Co.,* 556 F.2d 400, 406 (8th Cir. 1977). Conversely, if there is a "reasonable basis in fact and law supporting the claim" under state law, joinder is not fraudulent and, in the absence of complete diversity, the removed case should be remanded to state court. *Filla*, 336 F.3d at 810. Because fraudulent joinder cases rarely involve clean-cut liability issues, a district court is often required to "determine whether there is a reasonable basis for predicting that the state's law might impose liability against the defendant." *Id*. at 811. The removing defendant bears the burden of establishing fraudulent joinder. *Knudson v. Systems Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011).

---

[2] With regard to such statutorily-created federal court jurisdiction, it has long been recognized that diversity jurisdiction requires "complete diversity," that is, all defendants must be diverse from all plaintiffs. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806).

In fraudulent joinder litigation, a fundamental question often arises as to "how" a defendant may meet its burden. In general, courts have concluded that a district court considering a motion for remand "may consider the pleadings, supporting affidavits, and the motion for remand and supporting affidavits." *Parnas v. General Motors Corp.*, 879 F. Supp. 91, 93 (E.D. Mo. 1995). *See also Ford v. Elsbury,* 32 F.3d 931, 935 (5th Cir. 1994) ("[F]raudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony."); *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998) (although determination of the propriety of removal ordinarily depends only upon the plaintiff's pleadings, in the case of fraudulent joinder, the court may "go somewhat further [and the] defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent."); *Fowler v. Safeco Insurance of America,* 915 F.2d 616, 617 (11th Cir. 1990).

However, in this case, the Ridings assert that the Court should disregard the declarations filed by the individual sales representatives because they are merely "self-serving" and "conclusory." While acknowledging that other courts have reached a contrary conclusion, the Court rejects the Ridings' procedural objection. The underlying petition contains a series of generic allegations related to the "defendants" (collectively) that allege various acts and knowledge with regard to Pradaxa. The petition contains no specific facts regarding acts or knowledge of the individual sales representatives as they relate to the Ridings' alleged damages, Max Riding's use of Pradaxa, or the Ridings' interactions with Dr. Gupta. Given the generic allegations against the individual defendants, it is unclear how they could refute any involvement with the subject matter of the petition except by the types of declarations they filed. This issue was addressed by the Eighth Circuit 80 years ago:

5

> In the petition for removal, and the affidavits presented in opposition to plaintiff's motion to remand, it is asserted as a fact that the resident defendant had nothing to do with the transaction out of which plaintiff's cause of action arises. Defendant could scarcely do more than to meet this issue. It is called on to prove a negative against an all-embracing, sweeping conclusion. A negative in its very nature usually is susceptible of no more than approximate proof, and generally is sufficiently proved by proving some affirmative fact or state of facts inconsistent with the affirmative of the proposition to be negated.

*Leonard v. St. Joseph Lead Co.*, 75 F.2d 390, 397 (8th Cir. 1935). In such a circumstance, an affidavit from a defendant stating facts "though in the nature of negatives" is "the best evidence possible." *Id.* In light of this law, in looking to the substantive issue of potential fraudulent joinder in the present case, the Court will consider the declarations of the individual sales representatives that have been disputed – but not refuted[3] – by the Ridings.

The issue then is whether, in light of the evidence in the declarations, the defendants have borne the burden of proving that there is no arguably "reasonable basis for predicting that [Missouri] law might impose liability [on the allegedly fraudulently joined defendants] based upon the facts involved." *Block v. Toyota Motor Corp.*, 665 F.3d 944, 947 (8th Cir. 2011). In this case, the "facts involved" include the declarations of the individual sales representatives.

---

[3] In determining that a defendant was fraudulently joined and remand was improper in the *Leonard* case, the Eighth Circuit further noted that the plaintiff opposing removal:

> could have come forward with some showing of fact . . . and on this record we think he was called upon to meet the removal allegations with evidence. Not having so done, he cannot complain that the court held his pleading a device to prevent removal. His failure to produce more satisfactory evidence, when within his power, creates an unfavorable presumption against him.

*Leonard*, 75 F.2d at 397.

Put bluntly, then, the question before the Court is whether there is a reasonable basis for predicting that Missouri law might impose liability against the individual sales representatives for strict liability failure to warn, negligent failure to warn, breach of express warranty, breach of implied warranty, violation of the Missouri Merchandising Practices Act, fraudulent concealment, negligent misrepresentation, or negligent misrepresentation[4] given the evidence that the individual sales representatives:

(1)   did not sell Pradaxa to the Ridings,

(2)   did not sell Pradaxa to Dr. Gupta,

(3)   played no role in the design, testing or manufacture of Pradaxa,

(4)   have not played any role in the development or publishing of Pradaxa package inserts or marketing materials accompanying Pradaxa or otherwise disseminated to health care providers,

(5)   have not created, altered, revised or had any involvement in obtaining any approval for any warnings or instructions relating to Pradaxa,

(6)   do not personally know and have never had any direct dealings or communications with the Ridings,

(7)   do not personally know and have never had any Pradaxa-related dealings or communications with Dr. Gupta, and

(8)   did not make any warranties or representations regarding Pradaxa to the Ridings or to Dr. Gupta.

As a general rule, under Missouri law, the mere fact that a person is an "employee" of a company that might itself be liable to a plaintiff does not automatically mean that the plaintiff has a cause of action against the employee. *Barker v. Crown Drug Co.,* 284 S.W.2d 559, 561 (Mo. 1955) (noting that a plaintiff misunderstood "an agent's liability to third persons" where the

---

[4]   One cause of action in the Ridings' petition [strict liability for a design defect] is directed at only Boehringer.

plaintiff assumed that merely because the defendant "was an 'employee,' or an 'agent,' or even a store 'manager' that the doctrine of res ipsa loquitur was also applicable to him").  Nonetheless, under Missouri law, "there are situations where [an employee] can be held personally liable to a third person."  *State ex rel. Kyger v. Koehr*, 831 S.W.2d 953, 956 (Mo. App. [E.D.] 1992).  The *Kyger* court noted two examples:

> First, when an employee has or assumes full and complete control of his employer's premises, his liability to the public or to invitees is the same as that of his employer.  A second situation involves liability on the part of the employee who does not have complete control of the premises but may be liable for injury to third persons when he breaches some duty which he owes to such third person.  The test is whether he has breached his legal duty or been negligent with respect to something over which he did have control

*State ex rel. Kyger v. Koehr*, 831 S.W.2d 953, 956 (Mo. Ct. App. 1992) (*citing Giles v. Moundridge Milling Co.,* 351 Mo. 568, 173 S.W.2d 745, 751 (1943)).  The scenario of "full and complete control" is not applicable in this case.  As such, the Court will focus on whether Missouri law imposes a duty on the individual sales representatives *viz-a-viz* the Ridings and whether Missouri law would find a breach of any such duty under the facts involved herein.

Having reviewed the case law, the Court cannot discern any duty owed by the individual sales representatives to the Ridings in the absence of any communications or interactions between the sales representatives and the Ridings (and/or Dr. Gupta).  At least as to the Ridings and Dr. Gupta, the sales representatives were not sellers upon whom Missouri law imposes duties (including, in some cases, implied obligations and responsibilities).  Inasmuch as the sales representatives never communicated with the Ridings or Dr. Gupta, Missouri law regarding truthfulness and avoidance of misrepresentation and deception are inapplicable to the sales representatives.

Moreover, to the extent that the Ridings insinuate that sales representatives for pharmaceutical companies constitute a special class of defendants with some generalized duty to the public at large, the Court rejects such a notion as not being evidenced in Missouri law. Indeed, it would seem that Missouri law takes the opposite approach and provides such sales representatives with additional protections. As noted by one district court:

> Plaintiffs in these cases argue that because [the pharmaceutical company] assigned the sales representatives the duty to relay warnings regarding the diet drugs to the prescribing physicians, the sales representatives assumed an additional duty to the plaintiffs. We disagree. Missouri courts have adopted the learned intermediary doctrine. Under this doctrine, the sales representatives had no duty to provide warnings directly to the patients. Instead, any duty to warn is fulfilled through the drug manufacturer's warning to the prescribing physician.

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products*, 2004 WL 2203712, op. at 2 -3 (E.D. Pa. Sept. 28, 2004) (applying Missouri law).[5]

As a final note, the Ridings argue that they "should be allowed an opportunity to engage in discovery to establish whether the sales representative are liable." However, by bringing these claims against the individual sales representatives in the first instance, the Ridings and their counsel were warranting that "[t]he allegations and other factual contentions ha[d] evidentiary support." MO. R. CIV. P. 55.03(c)(3).[6] Unfortunately, the Court has not seen such evidentiary

---

[5] Moreover, in this case, there is no evidence that any of the individual sales representative gratuitously or voluntarily undertook actions that might impose a duty under the RESTATEMENT (SECOND) OF TORTS § 323. *See, e.g., Strickland v. Taco Bell Corp.,* 849 S.W.2d 127 (Mo. App. [E.D.] 1993).

[6] The rules also provide for some limited allegations in a petition that "if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." MO. R. CIV. P. 55.03(c)(3). None of the facts in the Ridings' petition are so identified. Instead, the petition contains numerous affirmative statements regarding the sales representatives (e.g., that they "personally marketed Pradaxa to Mr. Ridings' prescribing physician") that are incorrect.

support and the Court does not believe that discovery is appropriate under these facts to discover if such evidentiary support even exists. In the event the Ridings' discovery in this case going forward reveals an evidentiary foundation for asserting a claim against an individual sales representative, the Ridings may seek to add the claim back into this litigation, or, if federal court jurisdiction bars such an action, the Ridings may consider a suit against the individual sales representatives in an appropriate forum of their choosing (assuming that they have not otherwise preclusively resolved their claims with the drug company defendants).[7]

The Court is cognizant of the fact that the Ridings did not choose a federal forum for their case. However, Congress has explicitly enacted a removal statute that itself expressly takes into account the doctrine of fraudulent joinder. While a plaintiff's choice of forum is entitled to great deference, at the same time, this Court is obligated to exercise federal jurisdiction over cases that are properly brought before it. This is just such a case.

Accordingly, it is

**ORDERED** that *Plaintiff's Motion to Remand*, filed January 26, 2015 [Doc. 13] is **DENIED**.

    */s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**

---

[7] Potentially, the Ridings may even have claims if they later believe they can establish that the individual sales representatives were dishonest or misleading in the declarations filed with Court herein.